**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY McKINNEY (B-76809), | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 1433 |
| | ) | |
| OFFICER JOSEPH MOUTESDEOCA and | ) | |
| SERGEANT RICHARD ROCHOWICZ, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In the early morning hours of May 14, 2009, the Sam's Food Mart at 1438 West 103d Street in Chicago was robbed. Ann Clancy reported the burglary and told a 911 operator that she saw a person carrying a box exit the Food Mart through a broken window and enter a green car with a brown door. Around 5:15 a.m. that same morning, plaintiff Rodney McKinney was in the alley behind his mother's house, which is near the Food Mart. He asserts that he was performing his filial duties by taking out the garbage. After Chicago Police Sergeant Richard Rochowicz and Officer Joseph Montes de Oca (mistakenly referred to as Moutesdeoca in the plaintiff's federal complaint and state court pleadings) responded to the 911 call and arrived at the alley, they saw a cash register box sitting by the open garage door. The plaintiff (who later admitted he drove a green car with a brown door) spotted the officers, entered the garage, and activated the door but was thwarted by one of the officers, who placed his hand underneath the door to prevent it from closing. The officers ultimately arrested the plaintiff, who was charged with burglary.

In his complaint, the plaintiff alleges that he is entitled to relief under 42 U.S.C. § 1983. The defendants' motion for summary judgment is before the court. The plaintiff did not file a response, despite being given an extension of time to do so. For the following reasons, the defendants' motion is granted in its entirety.

**I.      Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden of showing that there are no issues of material fact and that he or she is entitled to a judgment as a mater of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Carrroll v. Merrill Lynch*, __ F.3d __, 2012 WL 4875456 at *3 (7th Cir. Oct. 16, 2012). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

When addressing a summary judgment motion, this court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *see also* N.D. Ill. Local Rule 56.1. Because the plaintiff is proceeding *pro se*, the defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 66.) The notice explains that if a litigant fails to respond to the movant's Local Rule 56.1 Statement, the court will consider uncontroverted statements admitted if they are supported by the record. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Although the plaintiff requested and received additional time to respond (R. 67, 68), he did not file a response. Accordingly, the facts in the defendants' Rule 56.1 Statement are admitted to the extent they are supported by the record. *Raymond*, 442 F.3d at 608. With these standards in mind, the court turns to the facts of this case.

## II. Background

At approximately 5:15 a.m. on May 14, 2009, Officer Montes de Oco and Sergeant Rochowicz separately responded to a call of a burglary at Sam's Food Mart at 1438 W. 103 Street in Chicago. (R. 63, Defs.' Statement of Facts ("SOF") at ¶ 6.) The officers were told that the car involved in the burglary was green with a brown door, and the plaintiff admitted his car is green with a brown door. (*Id.* at ¶¶ 7, 8, citing R. 65, Exh. G, Pl.'s Response to Requests to Admit.) Ann Clancy reported the burglary and told a 911 operator that she saw a person carrying a box exit the Food Mart through a broken window and enter the above-described car. (Defs.' SOF at ¶ 10.) Ms.

Clancy followed the car to the alley at the 11200 block of Homewood and remained on the phone with a 911 dispatcher until defendant Rochowicz arrived. (*Id.* at ¶ 11.)

Upon his arrival, Ms. Clancy pointed to the car, which Rochowicz saw backing into a garage. (*Id.* at ¶¶ 13, 15.) Defendant Montes de Oco then arrived at the scene and joined Rochowicz outside the garage, where both officers saw a cash register box in the alley in front of the garage door. (*Id.* at ¶ 19.) The plaintiff admits in his deposition that a cash register box was found by the garage he was using, but contends that it was actually outside his neighbor's garage door. (*Id.* at ¶ 20.) While the defendants were in the alley, the plaintiff activated the electric garage door. According to the plaintiff, he saw the officers while he was taking out the trash, became frightened, reentered the garage, and activated the door. (*Id.* at ¶ 23; *see also* Exh. F, Pl. Depo. at 55.) Rochowicz approached the door as it was descending, placed his hand under the door, pushed upward to prevent it from closing, and – according to the plaintiff – broke the door, the garage door opener, the tracks for the door, and rafters in the garage. (Defs.' SOF ¶¶ 24, 26.)

The officers entered the garage and handcuffed the plaintiff. (R. 63, Exh. F, Pl.'s Depo. at 59.) Montes de Oco then informed the plaintiff that the officers were responding to a burglary and began questioning him. (R. 63, Defs.' SOF ¶ 28.) The plaintiff asserts that he asked, "was it a black man," to which Montes de Oco replied, "shut up." (*Id.* at ¶ 29, quoting Pl.'s Depo. at 57-58.) The defendants brought the plaintiff into the alley to Ms. Clancy's car. (R. 63, Defs.' SOF ¶ 31.) Ms. Clancy identified the plaintiff as the person she saw burglarizing the Food Mart. (*Id.*)

The plaintiff was then taken to a police station, where he claims he was not read his rights and was questioned by additional officers before being charged with burglary. (*Id.* at ¶¶ 32-36, 38.)

The plaintiff filed a motion to quash the arrest and suppress evidence in his criminal case, arguing no probable cause supported his arrest. (*Id.* at ¶¶ 39, 43.) Both defendants testified at the hearing, and were questioned by the plaintiff's attorney. (*See* R. 65, Exh. E (transcript of March 11, 2010, suppression hearing in *People v. McKinney*, No. 09-09820 (Cook County Circuit Court) (Hill, J.)). After hearing testimony from the officers and the plaintiff's mother and considering arguments from the plaintiff's attorney and the Assistant State's Attorney, Cook County Circuit Court Judge Arthur Hill found that the officers had probable cause for the arrest and thus denied the motion to quash and to suppress evidence. (R. 63, Defs.' SOF ¶ 44; Exh. E at 29-30.) His ruling that probable cause existed has not been overturned. (R. 63, Defs.' SOF ¶ 45.)

Following the hearing, on September 8, 2010, the plaintiff pleaded guilty to burglary. (*Id.* at ¶ 46.) Shortly after he pleaded guilty, the plaintiff unsuccessfully sought to withdraw his plea. (R. 63, Exh. F, Pl.'s Depo. at 76-77; *see also* Exh. J, Docket of *People v. McKinney*, No. 09-09820, entries from 10/5/10.) The plaintiff acknowledged in his deposition that at the time of the deposition, neither his conviction nor the state court's finding of probable cause had been overturned. (R. 63, Defs.' SOF ¶¶ 45, 48.) In August of 2012, however, the state appellate court reversed the trial court's denial of the motion to vacate the plea. *People v. McKinney*, 975 N.E.2d 1212 (Ill.App. 1st Dist. Aug. 8, 2012). The state appellate court determined that the trial court mistakenly believed that the plaintiff was not eligible for a veteran's court and programs available to veterans. *Id.* at 1215-1219. The case was remanded to the state court for reconsideration of the motion to vacate, *id.*, and the plaintiff's criminal case appears to still be pending before the state trial court.

**III. Discussion**

The defendants argue that they are entitled to summary judgment because: (1) the plaintiff's claims of false arrest and illegal entry into the garage are barred by collateral estoppel based upon the state court's ruling in his criminal case; (2) the plaintiff lacks standing to claim damages to the garage because his mother owns it; (3) Officer Montes de Oco's alleged directive to the plaintiff to "shut up" when the plaintiff asked if the burglary report involved a "black man" does not give rise to an equal protection claim of racial profiling; and (4) the plaintiff's other claims – that he was not read his rights when arrested, that he was questioned about the burglary after he stated he wanted a lawyer, and that Officer Rochowicz gave false testimony at the suppression hearing – do not state valid claims under § 1983.

    **A.    Collateral Estoppel**

The defendants contend that the plaintiff cannot use this § 1983 case to relitigate the state court's finding that probable cause supported his arrest and that the officers' entry into the garage was reasonable. This court applies the state's rules on issue preclusion when determining the preclusive effect of a state court ruling. *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010). In Illinois, a previously litigated issue from a prior proceeding cannot be relitigated "if (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.* (citing *Herzog v. Lexington Township*, 657 N.E.2d 926, 929-30 (Ill. 1995); *see also Talarico v. Dunlap*, 685 N.E.2d 325, 328–29, (Ill.1997) (observing that collateral estoppel bars relitigation in a civil case of an issue previously decided in a criminal proceeding). Additional considerations are

whether a plaintiff was denied a full and fair opportunity to litigate the issue in his prior case and whether applying collateral estoppel would be unjust. *See Brown*, 599 F.3d at 775-77.

In this case, the issues addressed at the suppression hearing – whether probable cause existed for the plaintiff's arrest and whether the defendants' entry into the garage was reasonable – were addressed and decided in the state trial court. (R. 63, Exh. E at 27-30 (at the March 11, 2010, hearing on Plaintiff's motion to quash, Cook County Circuit Court Judge Hill found that probable cause existed for the plaintiff's arrest and that the officers' actions of forcing open the garage door and entering the garage were reasonable)); *see also Fells v. Adams*, No. 11 C 47, 2012 WL 2872118 at *3 (N.D. Ill. July 11, 2012) (Lefkow, J.) (a § 1983 false arrest claim challenging the existence of probable cause was barred by collateral estoppel because the issue of probable cause was determined in state criminal proceedings). Moreover, privity clearly exists since Mr. McKinney is the plaintiff in this case and was the defendant in the state court criminal case.

However, since the Illinois Appellate Court reversed the trial court's denial of the plaintiff's motion to vacate his plea and remanded the case for further proceedings, is the ruling on the motion to suppress a final judgment that can support a finding of collateral estoppel? The answer is "yes" as under Illinois law, collateral estoppel applies despite the pendency of the plaintiff's criminal case, as when "a defendant's conviction has been reversed for trial error, and the cause is remanded for a new trial, the doctrine of collateral estoppel bars the relitigation of a pretrial ruling, such as a motion to suppress, unless the defendant offers additional evidence or there are other special circumstances." *People v. Sutherland*, 860 N.E.2d 178, 192 (Ill. 2006), quoting *People v. Enis*, 645 N.E.2d 856, 865 (Ill. 1994). Illinois courts have indicated that special circumstances exist where the defendant was acquitted or the State did not rely on the evidence allowed by a pretrial ruling,

such that the defendant could not appeal or otherwise seek review of a trial court pretrial ruling. *Id.* at 198, citing *People v. Mordican*, 356 N.E.2d 71 (1976).

For example, in *Sutherland*, the defendant sought to relitigate a pretrial ruling to allow additional evidence after the state supreme court vacated his conviction and remanded for a new trial. The defendant in *Sutherland* had not challenged the pretrial ruling on direct appeal or in his post-conviction proceedings, even though he raised it in a post-trial motion for new trial. *Sutherland*, 860 N.E.2d at 196-97. The court found that his attempt to raise a new challenge to an issue already decided issue on remand was barred by Illinois issue-preclusion law. *Id.* at 197 ("Defendant's failure . . . to challenge on appeal the trial court's good-faith finding barred relitigation on remand.").

In the instant case, the plaintiff appealed the trial court's denial of his motion to vacate his plea, arguing that the trial court's finding that he was ineligible for veteran's court was erroneous. The plaintiff did not challenge the trial court's denial of his motion to quash the arrest. Thus, the Illinois Appellate Court did not consider arguments about the plaintiff's arrest, including the existence of probable cause and the officers' entry into the garage. *See* Briefs in *People v. McKinney*, No. 1-10-3364[1], and *People v. McKinney*, 975 N.E.2d 1212 (Ill.App. 1st Dist. Aug. 8, 2012). The plaintiff thus seeks to challenge issues already decided by the state court that he did not raise on appeal and cannot relitigate upon remand. This means that Illinois' rules of issue preclusion bar the plaintiff's false arrest claim as well as any claim based on the officers' use of

---

[1] This Court may take judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute," *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012), and has obtained copies of the briefs in *McKinney*, No. 1-10-3364 from the Illinois First District Court of Appeals.

force to prevent the garage door from closing. The defendants are, therefore, entitled to summary judgment as to these claims.

B. **Unlawful Seizure and Damage to the Garage Door**

The defendants contend that the plaintiff's claim for damage to the garage door fails because the plaintiff lacks standing since his mother owns the garage. Alternatively, they argue that the record does not support the plaintiff's claimed damages. The court first notes that, for the reasons stated above, this issue appears to be collaterally barred as the plaintiff did not request reimbursement for the alleged damage to the garage door in his state criminal case and the state trial court found that the officers acted reasonably when they prevented the garage door from closing. (R. 63, Exh. E at 27-30 (Judge Hill's pretrial ruling that the officers' acted reasonably)); *see also Brown*, 599 F.3d at 774.

In any event, even if the plaintiff's claim for reimbursement was properly before this court, it would still fail. A Fourth Amendment "seizure of property ... occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992), quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The record contains a warranty deed to the property showing that the plaintiff's mother is the owner. (R. 63, Exh. I, warranty deed to the property at 11204 S. Homewood, Chicago, IL 60643). The plaintiff thus lacks a possessory interest in the garage. This means that he lacks standing to bring a Fourth Amendment claim for damage to the garage. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (a husband lacked standing to raise a Fourth Amendment claim for the seizure of property that belonged to his wife).

In the interests of completeness, the court notes its agreement with the defendants' contention that the record contains no evidence documenting the value of the alleged damage to the garage. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (summary judgment warranted for a Fourth Amendment claim of damage to property where the plaintiff failed to put forth evidence about his damages); *see also On-Site Screening, Inc. v. U.S.*, 687 F.3d 896, 899 (7th Cir. 2012) (the summary judgment stage is the time when a party "must show what evidence it has that would convince a trier of fact to accept its version of events") (citation omitted). The defendants, therefore, are entitled to summary judgment on this claim.

C.     **Racial Profiling**

Although it is not entirely clear if the plaintiff intended to raise a claim of racial profiling in his complaint, the defendants briefed this issue. According to the defendants, they are entitled to summary judgment on the plaintiff's claim that he was arrested solely because of his race because the plaintiff has not pointed to evidence (as opposed to his speculation) showing that the officers acted with a discriminatory intent or treated similarly situated persons of a different race differently.

A violation of the Equal Protection Clause exists if "officers utilize impermissible racial classifications in determining whom to stop, detain, and search." *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001), citing *Whren v. United States*, 517 U.S. 806, 813 (1996) ("the Constitution prohibits selective enforcement of the law based on considerations such as race"). To prove an Equal Protection claim, "plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez*, 251 F.3d at 635-36. To demonstrate discriminatory effect, a plaintiff must show that he is a member of a protected class and that he was treated differently than similarly situated members of a non-protected class.

*Id.* at 636. To prove a discriminatory intent, a plaintiff must demonstrate that the defendant "selected or reaffirmed a particular course of action at least in part because of' . . . its adverse effects upon an identifiable group." *Chavez*, 251 F.3d at 645 (internal quotation marks and citation omitted).

Here, the plaintiff's racial profiling argument consists of his belief that he was targeted because of his race (as opposed to the detailed tip, the presence of the cash box in the alley, and an eye witness identification by a witness who observed the burglary). No evidence indicates that the officers treated a similarly situated person of a different race differently or were motivated based on race alone. Moreover, while the court must construe the plaintiff's filings liberally given his pro se status, any argument that he was arrested solely due to his race or that the officers would have acted differently if the plaintiff was not African-American would be frivolous.

The only indication that anyone at the scene was thinking about race came from the plaintiff, who asked, "was it a black person?" after Officer Montes de Oco told him that the officers were responding to a call of a burglary. (R. 63, Exh. F, Pl. Depo. at 57.) According to the plaintiff, Officer Montes de Oco did not answer and, instead, told the plaintiff to "shut up." (*Id.* at 58.) This exchange does not indicate that race was a factor. The fact that a command to "shut up" could be characterized as derogatory does not alter this conclusion as "such comments do not by themselves violate the Constitution." *Chavez*, 251 F.3d at 646 (racially insensitive remarks by an officer, though certainly not condoned, do not by themselves establish an Equal Protection Claim).

In sum, the events surrounding the plaintiff's arrest do not support an inference that the arrest was due to racial profiling and the plaintiff has not pointed to any admissible evidence on this

issue so the defendants are entitled to summary judgment on the plaintiff's racial profiling claim, to the extent he is making such a claim.

        **D.**     *Miranda* **Warnings & Allegedly False Testimony During the State Court Proceedings**

The plaintiff also appears to be arguing that the defendants failed to provide warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966), before bringing him to a police station and that defendant Rochowicz lied during the pretrial hearing on the plaintiff's motion to quash his arrest. (Compl. at 4-6.) The court did not address these claims in its initial review order, but will consider them now with the benefit of the full record and a clearer understanding of the plaintiff's position.

The failure to give *Miranda* warnings does not give rise to a § 1983 claim for damages unless a plaintiff demonstrates that a resulting un-warned statement was used in a criminal proceeding against him. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1025 (7th Cir. 2006). The plaintiff does not point to any incriminating statements used against him. Indeed, the plaintiff states that once he was at the police station, a detective (not one of the defendants) asked if the plaintiff wanted to give a statement and left after the plaintiff declined to do so. (R. 63, Exh. F, Pl. Depo. at 68-70). Accordingly, to the extent that the plaintiff seeks damages based on the alleged failure to give *Miranda* warnings to him, his claim fails as a matter of law.

This leaves the plaintiff's contention that defendant Rochowicz lied during the pretrial hearing on the motion to quash. The plaintiff does not provide any specifics and, instead, asserts that "Rochowicz had no part in the arrest and made false statements under oath to justify their illegal arrest." (Compl. at 6). This broad assertion is insufficient to impose liability. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (vague allegations in a complaint do not provide proper

notice of the grounds upon which a claim is based). Additionally, an officer is entitled to absolute immunity for such a claim. In *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983), the Supreme Court held that witnesses who allegedly gave perjured testimony at a criminal trial were absolutely immune from suit under 42 U.S.C. § 1983. The Seventh Circuit has recognized that such absolute immunity extends to a police officer's testimony at pretrial proceedings. *Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir. 1995); *see also Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008). Accordingly, the defendants are entitled to summary judgment on these claims.

**IV. Conclusion**

For the reasons stated above, the defendants' motion for summary judgment [62] is granted in its entirety. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

DATE: December 6, 2012

                                              Blanche M. Manning
                                              United States District Court Judge